IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DELTA T, LLC  
d/b/a BIG ASS FAN COMPANY  
2348 Innovation Drive  
Lexington, KY 40511  

      Plaintiff  

v.                                  Case No. _____

DAN'S FAN CITY, INC.  
300 Dunbar Avenue                      **JURY TRIAL DEMAND**  
Oldsmar, FL 33557  

SERVE: THE PRENTICE-HALL CORP.  
      11 East Chase Street  
      Baltimore, MD  

      Defendant.

**COMPLAINT FOR PATENT INFRINGEMENT
AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff, Delta T, LLC, d/b/a Big Ass Fan Company ("Delta T"), by and through its attorneys, Jeffrey M. Schwaber and Stein Sperling Bennett De Jong Driscoll PC and Perry J. Saidman and the SAIDMAN DesignLaw Group, hereby sues and demands permanent injunctive relief and legal damages in its favor and against Defendant, Dan's Fan City, Inc. ("DFC"), on grounds as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271. The claims arise out of DFC's actions with respect to certain products, as more fully described herein, that were invented and patented by Delta T.

## PARTIES

2. Delta T is a limited liability company organized and existing under the laws of the State of Kentucky. Delta T designs, engineers, manufactures and sells worldwide, residential and commercial ceiling fans as well as lighting that transform any space "through cutting edge technology, iconic design and effortless conservation."

3. Upon information and belief, DFC is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Oldsmar, Florida. Further upon information and belief, DFC owns and operates a retail store at 1059 Rockville Pike in Rockville, Maryland. DFC "manufacture[s] [its] own brand of ceiling fans under Gulf Coast Fans and TroposAir," which are sold through DFC's "own 44-Retail Locations, select lighting showrooms and online through [its] own websites as well as online through Amazon and Home Depot."[1] DFC sells in its Rockville, Maryland location its own TroposAir brand "Vogue 60 in. Indoor/Outdoor Ceiling Fan" (the "Vogue fan").

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is based on 28 U.S.C. § 1338.

5. Venue is proper under 28 U.S.C. § 1400(b).

## FACTUAL ALLEGATIONS

6. Ernest John Noble ("Noble") is an electronics engineer by training and a New Zealand ex-patriot who resides in Malaysia. Back in 2008, Noble set out to create a unique and innovative design for a residential ceiling fan, and ultimately designed what became known as the HAIKU ceiling fan (the "Haiku fan").

---

[1] https://www.dansfancity.com/about-us

6292630_1

7. The Haiku fan incorporates state-of-the-art technology manifested in an aesthetically beautiful, sleek and fluid design having three thin, curved blades blended seamlessly into the fan's center rotor. Its innovative design was inspired by the organic essentialist Ross Lovegrove, known for his ability to design functional pieces—such as DNA strand-like shaped staircases—which epitomize elegance without resort to unnecessary added features. In other words, the design concept is to create a functional yet minimalist work of art.

8. By design, the Haiku fan is the antithesis of the traditional ceiling fans that saturated the marketplace at the time of the invention of the Haiku fan. Prior to the invention of the Haiku fan, the majority of ceiling fans available were clunky models—typically having an unattractive industrial appearance with for example, exposed rivets, and the like. They were inefficient, noisy and ugly.

9. With the Haiku fan, Noble sought to revolutionize this antiquated yet practical and popular home accessory. Where traditional ceiling fans typically used (and still do use) thick flat blades, the Haiku fan blades comprise thin, curved sheet airfoils. While older fan models rely on heavy steel hardware to attach individual blades that jut out from and around its center hub, the Haiku fan's minimalist three (3) airfoils seamlessly blend into the center of the fan in a compact, horizontal plane.

10. On March 26, 2009, Noble filed a design patent application in the United States Patent and Trademark Office (USPTO) to secure protection for the aesthetic appearance of the Haiku fan. The USPTO allowed the application and issued United States Patent No. D614,757 (the "'757 Patent") on April 27, 2010, to Haiku Design Sdn Bhd ("Haiku Design") as the

6292630_1

Assignee, as a result of an assignment recorded with the USPTO on March 26, 2009. A copy of the '757 Patent is attached hereto and incorporated herein as Exhibit 1.[2]

11. News of Noble's unique Haiku fan design traveled far, wide and quickly. By 2010, Delta T, in Lexington, Kentucky, contacted Noble to inquire about his plans for the manufacture and distribution of the Haiku fan. At that time, Delta T was emerging as a powerhouse in the commercial and industrial fan industry and the company was looking to expand into the residential ceiling fan market. Delta T saw an exciting opportunity to do so with the Haiku fan.

12. After lengthy negotiations, Noble and Delta T agreed to join forces to bring the Haiku fan to market. As a result, by written assignment executed and delivered by Haiku Design to Delta T Corporation (now Delta T as a result of a conversion recorded with the USPTO on April 26, 2018), Delta T became, and now is, the owner, *inter alia*, of all right, title, and interest in and to the '757 Patent, having the exclusive right to make, use, sell, offer for sale, and import into the United States, the Haiku fan. A copy of the chain of title for the '757 Patent is attached hereto and incorporated herein as Exhibit 3.

13. After some sales occurring early in 2012, the Haiku fan's formal program rollout occurred in May, 2012. The Haiku fan was rolled out at a relatively high price for residential ceiling fans. Depending on material, size (52-, 60- or 84-inch diameters) and whether it is with an LED light or without, the Haiku fan ranged in price anywhere from Six Hundred Dollars ($600) to Twenty-Six Hundred Dollars ($2,600).

14. Notwithstanding its relatively high price point and range, the Haiku fan proved to be a great success. Eager to increase Delta T's presence in this new arena, Noble, along with

---

[2] Copies of the higher quality replacement drawings as originally filed in the USPTO for the Certificate of Correction are attached hereto and incorporated herein as Exhibit 2.

co-inventors Ken Siong Tan, Jon Jet Ling, and Seng Rui Chan, designed for Delta T a second residential ceiling fan (the "L-Series fan") intended to be less costly while still maintaining a modern and fluid form reminiscent of the Haiku fan.

15. On June 30, 2015, Noble, along with his co-inventors, filed a second design patent application with the USPTO claiming and therefore protecting the aesthetic appearance of the L-Series fan as a whole. This second patent application was allowed and issued on October 25, 2016 as U.S. Patent No. D770,027 (the "'027 Patent," which is not a subject of this Complaint).

16. On April 26, 2016, Noble and his co-inventors filed a third design patent application to protect the aesthetic appearance of the unique center rotor of the L-Series fan. This patent application was filed as a "continuation" of the '027 Patent. It was duly examined by the USPTO, and allowed. On January 16, 2018, the USPTO issued United States Patent No. D808,004 (the "'004 Patent"). A copy of the '004 Patent is attached hereto and incorporated herein as Exhibit 4. As a result of an assignment recorded with the USPTO on September 27, 2017 from Noble and his co-inventors to Delta T Corporation (now Delta T as a result of a conversion recorded with the USPTO on November 16, 2018), Delta T became, and now is, the owner, *inter alia*, of all right, title, and interest in and to the '004 Patent, having the exclusive right to make, use, sell, offer for sale, and import into the United States, the claimed center rotor of the L-Series fan. A copy of the chain of title for the '004 Patent is attached hereto and incorporated herein as Exhibit 5.

17. The '004 Patent specifically claims and therefore protects the appearance of the L-Series fan's center rotor, which is unique, remarkably striking, and easily recognizable, especially compared to the other residential ceiling fans available on the market at that time.

6292630_1

Put simply, there is a circle in the center of the rotor of the L-Series fan that delineates three equally-spaced curved outer segments from the outer edges of which seamlessly extend the fan's (unclaimed) airfoils. The visual boundary between each of the curved outer segments is a radial line which further emphasizes the seamless organic construction of the fan as well as the absence of traditional steel blade attachments jutting out from a center hub.

18. Despite the patent protection of the Haiku and L-Series fans, Delta T discovered that DFC is knowingly manufacturing, importing into the United States, and offering for sale and selling, a residential ceiling fan, the Vogue fan, which directly infringes both the '757 Patent and the '004 Patent. Representative photographic depictions of the Vogue fan are attached hereto and incorporated herein as Exhibit 6.

19. Upon discovery of the infringement, Delta T notified DFC that its unauthorized manufacture and sale of the Vogue fan infringed the '757 Patent. Further, Delta T demanded that DFC cease and desist any and all manufacture, import, distribution and/or indirect or direct sale of the Vogue fan. Yet, DFC refused and continues to refuse to do so.

20. At no time has Delta T authorized DFC to manufacture, import into, distribute and/or sell or offer for sale, indirectly/directly, in the United States, the Vogue fan, which infringes the '757 Patent and the '004 Patent.

## COUNT I
**(Infringement of the '757 Patent)**

21. Delta T incorporates herein by reference the allegations set forth in paragraphs 1 through 20 above as if fully set forth herein.

22. DFC has, with full knowledge of the ownership by Delta T, infringed the '757 Patent by engaging in conduct such as the following:

6292630_1

a) making, causing to be made, importing, using, selling and offering for sale, without permission and/or payment, the Vogue fan. The Vogue fan, marketed and sold by DFC, is but a mere colorable imitation of the design claimed in the '757 Patent. The appearance of the Vogue fan is substantially the same as that of the '757 patented design in the eye of an ordinary observer; and

b) actively inducing and causing others, such as manufacturers and retailers of the Vogue fan, to make, cause to be made, import, use, sell, and offer for sale the Vogue fan whose appearance is substantially the same as that of the design claimed in the '757 Patent in the eye of an ordinary observer.

23. Delta T has given DFC actual notice of its infringement of the '757 Patent. DFC's infringing activities have been and continue to be knowing, deliberate, willful and wanton and in conscious disregard of Delta T's patent rights, making this an exceptional case under 35 U.S.C. § 285.

24. Delta T has sustained damages as a result of DFC's infringing activities and will continue to sustain damages in the future unless the infringement of the '757 patent is permanently enjoined by this Court. Such damages include lost profits, erosion of Delta T's sales for its competing Haiku fans, and in any event no less than a reasonable royalty as set forth in 35 U.S.C. § 284.

WHEREFORE, Delta T prays that this Court grant the following relief:

A. A judgment that DFC has infringed the '757 Patent;

B. An accounting for damages and judgment thereon resulting from DFC's infringement of the '757 Patent but no less than a reasonable royalty, together with pre- and post-judgment interest;

6292630_1

C.  A judgment in favor of Delta T and against DFC in the amount of DFC's total profit on sales of the Vogue fan, as set forth in 35 U.S.C. § 289;

D.  A judgment that DFC knowingly and willfully engaged in the infringement of the '757 Patent and the trebling of damages pursuant to 35 U.S.C. § 284;

E.  A permanent injunction against DFC, its officers, agents, employees, parent and subsidiary corporations, assigns, successors in interest and all those in active concert or participation with them or any of them, enjoining them from continued acts of infringement of the '757 Patent;

F.  A judgment holding this action to be an exceptional case and an award to Delta T of its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

G.  Such other and further relief as to this Court deems just and proper.

## COUNT II
### (Infringement of the '004 Patent)

25.  Delta T incorporates herein by reference the allegations set forth in paragraphs 1 through 20 above as if fully set forth herein.

26.  DFC has, with full knowledge of the ownership by Delta T, infringed the '004 Patent by engaging in conduct such as the following:

a)  making, causing to be made, importing, using, selling and offering for sale, without permission and/or payment, the Vogue fan. The Vogue fan, marketed and sold by DFC, incorporates a center rotor that is substantially identical in appearance to the design claimed in the '004 Patent. At worst, the appearance of the center rotor of the Vogue fan is but a mere colorable imitation of that claimed in the '004 Patent, being substantially the same in the eye of an ordinary observer; and

6292630_1

b) actively inducing and causing others, such as manufacturers, retailers and owner operators of the Vogue fan, to make, cause to be made, import, use, sell, and offer for sale the Vogue fan having a center rotor whose appearance is substantially the same as—if not identical to—that of the design claimed in the '004 Patent in the eye of an ordinary observer.

27. Delta T has given DFC notice of its infringement of the '004 Patent by marking the L-Series fans with the number of the '004 Patent. DFC's infringing activities have been and continue to be knowing, deliberate, willful and wanton and in conscious disregard of Delta T's patent rights, making this an exceptional case under 35 U.S.C. § 285.

28. Delta T has sustained damages as a result of DFC's infringing activities and will continue to sustain damages in the future unless the infringement of the '004 Patent is permanently enjoined by this Court. Such damages include lost profits, erosion of Delta T's sales for its competing L-Series fans, and in any event no less than a reasonable royalty as set forth in 35 U.S.C. § 284.

WHEREFORE, Delta T prays that this Court grant the following relief:

A. A judgment that DFC has infringed the '004 Patent;

B. An accounting for damages and judgment thereon resulting from DFC's infringement of the '004 Patent but no less than a reasonable royalty, together with pre- and post-judgment interest;

C. A judgment in favor of Delta T and against DFC in the amount of DFC's total profit on sales of the Vogue fans, in accordance with 35 U.S.C. § 289;

D. A judgment that DFC knowingly and willfully engaged in the infringement of the '004 Patent and the trebling of damages pursuant to 35 U.S.C. § 284;

E. A permanent injunction against DFC, its officers, agents, employees, parent and subsidiary corporations, assigns, successors in interest and all those in active concert or participation with them or any of them, enjoining them from continued acts of infringement of the '004 Patent;

F. A judgment holding this action to be an exceptional case and an award to Delta T of its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

G. Such other and further relief as to this Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:    /s/
Jeffrey M. Schwaber (06095)
25 West Middle Lane
Rockville, Maryland 20850
301-340-2020
301-354-8131 (fax)
jschwaber@steinsperling.com

and

SAIDMAN DesignLaw Group

Perry J. Saidman (05296)
8601 Georgia Avenue
Silver Spring, MD 20910
301-585-8601
301-585-0138 (fax)

6292630_1

## DEMAND FOR JURY TRIAL

Delta T, LLC d/b/a Big Ass Fan Company elects a trial by jury of any issues and claims in this action to which it is entitled.

<pre>
                                          /s/
                                   Jeffrey M. Schwaber
</pre>