IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
*Southern Division*

| | | |
|---|---|---|
| **DELTA T, LLC**<br>**d/b/a BIG ASS FAN COMPANY,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:18-cv-03858-PWG |
| **DAN'S FAN CITY, INC.** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Delta T, LLC. ("Delta") seeks permanent injunctive relief and monetary damages from Defendant Dan's Fan City, Inc. ("Dan's") for patent infringement. *See* Compl. 1, ECF No. 1. Dan's moved to dismiss for improper venue. Fed. R. Civ. P. 12(b)(3); *see* Def.'s Mot. to Dismiss, ECF No. 26. Because I find that the Federal Circuit's restrictive interpretation of 28 U.S.C. § 1400(b) precludes a finding that Dan's has a "regular and established place of business" in Maryland, this Court is not a proper venue. *See In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). But rather than dismiss this case, I will transfer it to an appropriate venue. 28 U.S.C. § 1406(a). The Defendant previously asked Delta to agree to a transfer to the District Court for the Central District of Florida, and, because I find that that is an appropriate venue, that is where it will be transferred. *See* Pl.'s Opp'n, ECF No.27, Ex. 1.

1

# FACTUAL BACKGROUND

The issue before me is whether Maryland is an improper venue. Dan's' motion to dismiss was made pursuant to Rule 12(b)(3), under which this Court is permitted to consider evidence outside of the pleadings and it must view the facts in the light most favorable to the plaintiff. *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 365-66 (4th Cir. 2012). Because the facts cited in the motion to dismiss and opposition are more relevant to the issue of proper venue than those in the complaint, they are what I will consider, and I will draw all inferences in favor of Delta.

Dan's is a distributor of ceiling fans. It is incorporated, headquartered, and has its principal place of business in the State of Florida. *See* Hibbeln Dec'l ¶¶ 2-3, ECF No. 26-2.[1] To reach customers, Dan's offers its products through its own website, 30 stores that it owns, and 9 that are independently owned, but employ the name "Dan's Fan City" to indicate that they offer Dan's products, as well as through the websites of Home Depot and Amazon. *Id.* at ¶ 9, 10.

Dan's once owned two stores in Maryland but sold both to Fan Man of Rockville Inc. ("Fan Man") in 1990. *Id.* at ¶ 11-12. Today, only one of those stores remains open, and it is the only

---

[1] Dan's supported its motion to dismiss with a declaration sworn under penalty of perjury of its CEO, David Hibbeln, which this Court may consider in resolving the motion. Delta contends that Mr. Hibbeln "has no personal knowledge" of facts concerning Dan's' relationship with a store that uses the Dan's Fan City name located in Rockville, Maryland and owned by Fan Man and, therefore the declaration should not be considered in support of Dan's motion to dismiss. Pl.'s Opp'n 8 n.11, ECF No. 27. But Hibbeln's declaration recites that the facts it contains are based on his "personal knowledge or upon investigation of the corporate records of Dan's." Hibbeln Dec'l ¶ 1, ECF No. 26-2. Further, Hibbeln clearly explains how Dan's once owned two stores located in Maryland, but sold both to Fan Man in 1990, and the only one remaining in business is the one located in Rockville, Maryland, which is owned by Fan Man, but which uses "Dan's Fan City" in its name. I find nothing deficient in the factual basis of Hibbeln's declaration, nor unusual about a CEO reciting facts within his personal knowledge and derived from a review of the records of his corporation. Moreover, Delta offers no facts of its own to contradict those in Hibbeln's declaration. For that reason, I will consider it.

store in Maryland using "Dan's Fan City" in its name. *Id.* at ¶ 12. That store is known as Dan's Fan City of Rockville ("DFC Rockville"). The relationship between Dan's and DFC Rockville is the crux of this motion to dismiss.

As Dan's CEO explains in his declaration, from 1990-2000, the relationship between Dan's and DFC Rockville was governed by a written Dealership Agreement. *See* Hibbeln Dec'l ¶ 13, ECF No. 26-2; *see also* Pl.'s Opp'n, ECF No. 27, Ex. 2 ("Dealership Agreement"). That agreement detailed the many ways in which Dan's had the authority to dictate the operations of DFC Rockville, such as approval over: the physical appearance of the store, the advertising DFC Rockville presented, what the employees wore and how they were trained, and store hours. Dealership Agreement ¶ 13. However, since the expiration of the Dealership Agreement in 2000, the only governing agreement between Dan's and DFC Rockville is oral and has only two terms: (1) either party may terminate the relationship upon notice to the other party and; (2) to be able to use "Dan's Fan City" in its store name, Fan Man's store inventory must consist of mostly Dan's products. Hibbeln Dec'l. ¶ 14.

Importantly, Dan's CEO swore in his declaration that DFC Rockville operates independently from it because, *inter alia*, DFC Rockville: owns or leases its own place of business; makes personnel decisions; trains its employees; uses its own Maryland issued tax identification number; determines its hours of operation, products to stock and sell, product pricing, store layout, inventory, advertising; has its own customer lists (which it does not share with Dan's); maintains its own books and records, carries its own insurance, has its own business license, and files its own tax returns under its own federal ID number. Hibbeln Dec'l ¶15,

As Delta points out, Dan's refers to DFC Rockville on its website as one of its "own 44-Retail Locations," and invites customers through its website to provide feedback about their

3

buying experience of any Dan's products, including those purchased at the DFC Rockville store. *See* Pl.'s Opp'n, ECF No. 27, Ex. 5, 8. Lastly, Dan's directs purchasers of any of its products to contact it directly for any warranty questions, and to return defective products to it directly instead of to the retail medium (store or internet) the customer used to purchase the product. *See* Pl.'s Opp'n, ECF No. 27, Ex. 10.

The issue for this Court, then, is whether the relationship between Dan's and DFC Rockville is close enough to establish Maryland as a proper venue for this suit against Dan's.

## STANDARD OF REVIEW

Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes parties in a civil action to move to dismiss an action for improper venue. "When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996). If the Court has not held an evidentiary hearing, the plaintiff must make only a prima facie showing of venue to survive the motion to dismiss. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

## DISCUSSION

28 U.S.C. § 1400(b) controls what venue is proper for patent infringement cases. The statute provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. 1400(b). For purposes of § 1400(b), "a domestic corporation 'resides' only in its State of incorporation." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Because Dan's is incorporated in the State of Florida, there is no dispute that the residency

4

requirement of the statute is not met. Turning to the second clause of 28 U.S.C. § 1400(b), venue is proper in a district where: (1) the defendant has committed acts of infringement and (2) has a regular and established place of business. Dan's makes no argument as to the first prong, so my focus is only with whether Dan's has a regular and established place of business in Maryland.

I must look to Federal Circuit law for guidance regarding what 28 § 1400(b) requires. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (holding that because the Federal Circuit applies its own law in matters unique to patent law, and because 28 U.S.C. 1400(b) is the "exclusive provision controlling venue in patent infringement proceedings," Federal Circuit law, rather than regional circuit law, controls) (citing *TC Heartland*, 137 S. Ct. at 1518). The Federal Circuit has held that the requirement of having a "regular and established place of business" is a more rigorous standard than the minimum contacts required for personal jurisdiction or the "doing business" standard of the general venue provision. *Id.* at 1361. A defendant has a regular and established place of business in a state where three requirements are met: (1) there is a physical place of business in the district; (2) it is a regular and established place of business; and (3) it is the place of the defendant. *Id.* at 1360.

Neither party meaningfully addresses the existence of either the first or second requirement. Dan's argues that DFC Rockville is an independently-owned distributor, over which it exercises no control and therefore, is not its place of business. *See* Def.'s Mot. to Dismiss 7, ECF No. 26. Delta argues that Dan's and DFC Rockville's relationship is such that "DFC Rockville is the Defendant," and that therefore venue is proper. Pl.'s Opp'n 8, ECF No. 27. The issue, then, is whether DFC Rockville is a place of the defendant.

There is no rigid test to decide where a corporation's regular and established place of business is located. Rather, courts are encouraged to weigh all relevant considerations with the end

goal of establishing whether the defendant actually engages in business from the location. *In re Cray*, 871 F.3d at 1364. Relevant considerations include: "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; "whether the defendant conditioned employment on an employee's continued residence in the district"; whether the defendant stores materials at the place "so that they can be distributed or sold from that place"; marketing or advertisements "to the extent they indicate that the defendant itself holds out a place for its business"; and "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Id.* at 1363-64. The mere fact that a defendant has advertised that it has a place of business in the district or the fact that the defendant has set up an office in the district is not sufficient to find the place is *of the defendant*. *Id.* at 1364. The defendant must "actually engage in business from that location." *Id.*

Delta has not met its burden of making a prima facie showing of venue because the facts do not establish that DFC Rockville is a place of business of Dan's. First, the Dealership Agreement under which Dan's exercised substantial control over DFC Rockville expired 19 years ago, and Delta has not shown that any of its terms survived the expiration. The Agreement is therefore of no use in evaluating Dan's current involvement with DFC Rockville.

Delta points to: the terms of the oral agreement between Dan's and DFC Rockville; the fact that Dan's advertises DFC Rockville as one of its "own 44-retail locations;" the evaluations that Dan's invites its customers to fill out on its website; and the fact that Dan's encourages its customers to contact them directly for warranty claims, to support its contention that DFC Rockville is a regular and established place of Dan's business. But none of these facts shows that Dan's actually engages in business from DFC Rockville beyond filling DFC Rockville's orders

for Dan's' products for DFC Rockville to offer for sale in its store. To the contrary, DFC Rockville is a separately owned distributor of Dan's Fan City products which maintains its own corporate identity and operates wholly independently of any ownership or control by Dan's. Delta offers no facts to show that Dan's owns, leases, or controls the DFC Rockville location, and none of the facts in the record before me show that Dan's conditioned its agreement with DFC Rockville on DFC Rockville's continued presence in Maryland. Similarly, no facts show that Dan's stores *its* inventory at DFC Rockville in order that *it* may sell them to sell or distribute them there. While Dan's does list DFC Rockville as a place where one can find its products in Maryland, "the mere fact that a defendant has advertised that it has a place of business . . . is not sufficient" to show that Dan's itself has a regular and established place of business at DFC Rockville's location. *In re Cray*, 871 F.3d at 1364.

Furthermore, the terms of the oral agreement (allowing DFC Rockville to use Dan's Fan City's name and logo if DFC Rockville sells a majority of Dan's products) do not establish that Dan's actually engages in business from DFC Rockville because Dan's exercises no control over how DFC Rockville conducts its business. The terms of the oral agreement do not demonstrate that Dan's exercises control over DFC Rockville because either party may terminate the relationship upon notice to the other party, and because Dan's does not require DFC Rockville to use its name or logo. *Zaxcom, Inc. v. Lectrosonics, Inc.*, 2019 WL 418860 at *9 (E.D.N.Y. Feb 1, 2019) (finding that Plaintiff's use of the Defendant's logo and name in Plaintiff's domain name was inadequate to prove venue because it was all done with Defendant's consent, not at Defendant's direction). Delta cites *Blitzsafe Taxes, LLC v. Bayerische Motoren Werke AG* for the proposition that using the defendant's name and logo is enough to transform an independent distributor into the defendant itself. No. 17-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6,

7

2018); *see* Pl.'s Opp'n 8. However, the *Blitzsafe* court simply found that the use of the defendant's name and logo by the Texas auto dealership, when viewed in conjunction with the many other indicia of the defendant's conducting an established place of business in Texas, weighed in favor of finding venue; the court did not find this to be dispositive. *Id.* at *8. The court also found that because the defendant did not sell its products directly but made the dealership the *exclusive* location to buy the defendant's products, the dealership was a place of business of the defendant. *Id.* This is distinguishable from the situation here, as Dan's makes its products available through its own website and through other distributors such as Amazon and Home Depot, as well as other independently and corporately owned stores. *See* Hibbeln Dec'l. ¶ 9.

Lastly, the fact that Dan's asks its customers to go directly to them for warranty claims, rather than through distributors such as DFC Rockville, militates against finding venue in Maryland.

For all the above reasons, I cannot conclude from the record before me that Dan's regular and established place of business is in Maryland. Therefore, venue in this court is not warranted, and the case must be transferred to Florida, where it is warranted.

## CONCLUSION

Accordingly, the Court GRANTS Defendant Dan's Fan City's Motion to dismiss without prejudice and will transfer this action to the District Court for the Central District of Florida.

A separate Order follows.

7/17/2019
Date

Paul W. Grimm
United States District Judge

8